Next case this morning is the case of Lori Isom, individually, as an administrator of the estate of Jerry Isom, deceased, versus William Barham, the state of Illinois, and James Sledge, Director of the Department of Central Management Services, and William R. Burr Barham, in State Farm Insurance. We have Mr. John Womack, and for, let's see, we have consolidated cases, and we have Mr. John Womack, and we have Mr. Donald Farrell, both representing appellants, and we have Brett Lagner, representing Napoli, and I understand you have worked out your time periods. Yes, ma'am. So, are you beginning, Mr. Womack, or? Our brief is, Your Honor, Donald Farrell will take 15, John will take five, and then John will take the five again. Okay. You may begin then, Mr. Farrell. Thank you, Your Honor. May it please the Court, counsel, this Court recently affirmed the jury verdict in the underlying case of Isom v. Barham. Barham rose out of a motor vehicle accident on October 16, 2000. Mr. Barham was employed as the warden of the correctional facility in Vienna. The decedent was in the vehicle with him. There was a disputed trial, which is not pertinent for this case as to who was driving. That was one of the disputed issues, but that's over and done with. One car accident, Mr. Isom was killed. Mr. Isom's estate brings a civil case against Mr. Barham. Mr. Barham was operating a state vehicle but is required to carry his own private insurance with limits of 100, 300 bodily injury, and then the state provides up to $2 million through the Department of Central Management Services of liability coverage. Per the statute we're going to talk about shortly, in the event that a state employee is involved in an incident, has a claim brought against the employee, sounding in court, when the employee is in the scope of his employment. I'll point out to you the statute uses the phrase scope of employment, whereas in the Workers' Compensation Act, which we'll get to in a moment, it rises out of it in the course of employment. In any event, I, on behalf of Barham, Mr. Barham, tend the defense of the case to the state of Illinois pursuant to statute that provides, among other things, whenever and to the extent that a state employee operates a motor vehicle or engages in any other activity covered by self-insurance under this section. This is the self-insurance plan of the CMS, Department of Central Management Services. State of Illinois shall defend, indemnify, and hold harmless the employee against any claim in tort filed against the employee for acts or omissions within the scope of the employee's employment in any proper judicial forum and not settled pursuant to this subdivision of subparagraph 11. The incident occurred in October 2000. February 2001, I wrote the Department of Central Management Services, I believe it was them as opposed to the AG's office, in my letter, original letter, tendering the defense to the state under this statute and making the demand that they defend, indemnify, and hold Mr. Barham harmless. They refused to do so. The state took the position he was not in the scope of his employment. We then defended the case. It was tried to verdict in the year 2000. There was a verdict of $1,012,000 rendered by the jury in Sling County. Coincidentally, over time, I tendered a number of times the defense of this case to the department and to the AG's office. Coincidentally, Mr. Barham was injured in this accident, brought a worker's compensation claim against the Department of Corrections, was made, received an award for his injuries wherein the arbitrator Dibble found that he was in the scope of his employment, in the course of his employment, not the scope of it, at the time of the occurrence and made an award. The state appealed that to the full commission and it was affirmed by the full commission. And as your honors know, there is no further appeal on behalf of the state from an affirmance before the full commission. Once that decision came in, and that was in 2007, I sent a copy of the decision again to the Department of Central Management Services and again under the statute tended to the defense. And this time the state decided, or the response was, well, the commission and the arbitrator made a finding that Mr. Barham was a passenger, not a driver, which is not technically correct, just as an aside, that comment is made in the commission decision. But in any event, that was the state's position in 2007. And coincidentally, since 2007, on two or three other occasions, and it still holds the record at this point, because I didn't attach it to my brief, it didn't feel necessary. The arbitrator specifically used words, no evidence was introduced from which it may be inferred that Barham was driving at the time of the accident. It doesn't end there. It says the evidence is to the contrary. Yes, sir. Right. Yes. But in any event, the suit against Mr. Barham in circuit court was on the theory he was driving the car, which we tested. We had expert testimony. The plaintiff, of course, was represented by John, had expert testimony. The jury found it in their favor, and that's been affirmed by this court. Following the jury verdict, John filed a suit, which is the basis of his appeal in the circuit court of Sling County, against the state to pay the balance of the verdict. State Barham paid its hundred-plus accumulated interest to the date it made the payment, whatever that was. And John brought such a suit. I then intervened in that suit on behalf of Barham and State Barham, who employed me to defend, seeking for two things. One, asking the court to declare that the state was obligated to identify him to the full amount of the verdict, less the credit for the payment of the bodily injury limit plus accumulated interest to the date of payment, and to reimburse State Barham for its cost of defense incurred in defending the case that we contend the State of Illinois was obligated to defend under the statute we cited. And that's where we are here today. The State of Illinois and the director, Department of Central Management Services, filed a motion to dismiss the trial court, asserted exclusivity of the court claims. The court sustained that motion, dismissed our case, and John's case as well, finding that the circuit court did not have jurisdiction to hear the case, but only the court claims did. And that's why we're here today. And the issue as it relates, in my opinion, to Mr. – the intervene orders, I'll just call them that. The issue as it relates to the intervene orders is, based upon that statute, in what forum does one seek the enforcement of the statutory duty on the Department of Central Management Services to provide a defense, to indemnify and to hold the employee harmless who has a tort claim brought against him or her as a result of their actions during this – in the scope of their employment? That's the issue. The State takes a position. You've got to do that in the court of claims. It is our position that the appropriate place for that to be heard is the circuit court. We cite the Kaiser case, which the court, I'm sure, is well aware of, which decided that under this particular paragraph I read, which is the second – happens to be the second sentence of the current form of this section. In the Kaiser case, an appellate court found a phrase in any proper judicial forum contained in the statute included the circuit courts. And therefore, it was – it represented a carving out – that was the phrase used by the court in Kaiser – a carving out of an exception to the exclusivity of court of claims jurisdiction. I want to emphasize, if the court will permit me again, the specific language upon which we rely from the statute. Whenever and to the extent that a State employee operates a motor vehicle or engages in other activity covered by self-insurance under the section, the State shall defend, indemnify, and hold harmless the employee against any claim of tort filed against the employee for acts or omissions within the scope of employee's employment in any proper judicial forum. It is our contention that if the State violates that statute, which we contend they did by their refusal to defend, that we can then seek – attempt to seek relief in the circuit court to compel the State to comply with that statutory duty. Let me just mention briefly in the SCOPA. We cite the Mabee case and the Dempsey case on the issue of collateral estoppel and then a finding by the Industrial Commission that employee – employee's injury arose out of it in the course of the employment. It's so closely aligned with, in the one case, and the – I think it was a policeman was injured in – both in the line of duty and there was a statute, a disability statute, that he applied for. And after he had found to be, in the Mabee case, in the course of his employment and was – therefore was compensable under the compact, his employer then sought to relitigate that same issue and said, well, that's not the same thing as being injured in the line of duty. And the court in the Mabee case says, no, it's essentially the same thing. I mean, semantically you can argue about it, but they didn't say this, but the intent was – or the report, I believe, was it's a distinction without a difference. It is our contention that under the doctrine of collateral estoppel, the State cannot take the position that Mr. Barn was not in the scope of his employment when this accident occurred for which he was sued on the theory that he was the driver and for which a verdict has been rendered against him. That by virtue of the doctrine of collateral estoppel and the finding of the arbitrator, Dibble, and a permit for the full commission, that he – his injuries for which he sought arising out of the same accident that he was – arose out of in the course of his employment. Of course, that statutory – or that language coming out of the comp statute effectively precludes the State from saying, well, we disagree with that and we're going to try to litigate that elsewhere. It's kind of interesting the State in its brief takes the position that, well, it doesn't constitute collateral estoppel because the State doesn't get judicial review from that decision of full commission. And we respectfully suggest they ought to take that up with the legislature and not this court. But that aside, the requirement to defend, indemnify, and hold harmless prefaced with the verb shall, which we all know is mandatory, not discretionary. And making reference to the defense of a tort claim that is brought in any proper judicial forum, which the Courts of Illinois held to be a circuit court, and it's not – the exclusivity of the court of claims doesn't apply to that. That it stands to reason, therefore, that if the State breaches that statutory duty, you have the right to seek the enforcement of that statutory duty to defend, indemnify, and hold harmless in the same circuit court. For that matter, you can probably bring in any circuit court, but in this case, we tend to bring in the circuit court where the underlying case is tried. And that is – that's our case. And an insurer who elects not to provide a defense to either – because they think there's a question of whether a risk is covered that is presented in the complaint. An insurer must either defend under a reservation of rights or seek a DJ, bring a declaratory judgment action, or both, as that Supreme Court opinion says. They did nothing. And I think – and I recognize that is arising a duty that arises out of a contract, i.e., a contract of insurance, and that's not what we're dealing with here. We're dealing with – Can I try this for me? I think you take the position that the duty to defend falls under the second paragraph of Section 11, and the State contends it falls under the third paragraph. Am I correct? I believe that's correct, Your Honor. Would that be the – how we resolve this, if we decide which paragraph applies, is going to be – Well, the – let me give that some thought for just a moment, if the Court please. The – our contention is the duty to defend is the tort claim. Go ahead and say it. I'm sorry. I'm sorry. You can go ahead and finish your thought. I think we're both going to say that. The duty to defend relates to defending the tort claim in circuit court. And there's a concurrent duty to defend and indemnify a whole harness. And the State did nothing. Just say, well, we're not going to do it. And it's a clear violation of the statutory duty. Thank you. Mr. Wong has a balance of time. Okay. You'll have the opportunity – no rebuttal. No, you won't. No, you won't. Excuse me? Okay. You can change your mind. To answer the judge's question, that issue was resolved by the Supreme Court in the Kaiser case. It talks about the exact same language. It talks about the interpretation. It says there's no – there is no need to worry about qualifications for interpretation. It's plain on its face. And it says the second paragraph applies. And the Kaiser case, which Don cited – I did not cite in my brief – is exactly on point. The language in that case says, the Supreme Court, we believe that the statement – I'm sorry. There's another in my quote. It says that the defense bases its claim on a statement by counsel for the plaintiff that the case was against the state. And the court said we believe that statement to be without import. As plaintiffs are not presented with an election as to indemnity, rather it occurs by operation of the statute itself. That's kind of a convoluted way of saying what I'm trying to say and what Don tried to say. The issue before this court, and the only issue, is whether or not the state court has jurisdiction over this case. Clearly it does. The state – the attorneys for the state are like wind-up dolls. You wind them up and they always say sovereign immunity, sovereign immunity, sovereign immunity. Sovereign immunity had nothing to do with this. It has a lot to do with the obligation imposed on the director by the legislature. It is not the plaintiff who is trying to impose this duty on the state. It is, in fact, as the court said, in operation. It occurs by operation of the statute itself. The statute says we have the authority and the requirement to do this. The other issue I want to raise briefly that are different from my case than Don's, I don't know that the prayer for relief makes any difference whether we have jurisdiction or not. But the prayer for relief, I don't think at the time the case was filed, could demand that they pay the judgment. There was a trial court judgment that was still on appeal. It's still on appeal. This court has ruled that they still have the right to go from there. They have the obligation to do one of those things and all of those things, but not necessarily the one that we pick. So my motion for leave to amend should have been granted. And the trial court should decide that the order by the trial court should be, when this case is remanded, that you've got to comply with the statute. How you comply is within your discretion. The issue here, though, and the point I keep making repeatedly and correct me not very well, is they don't have the discretion to ignore the statute. And this is a tragic case for everybody involved. Barb was a warden. I mean, you don't get to be a warden by being a chump. Decent guy. Had an accident and kills his friend in the accident. No indication he was drunk at the time. He's driving a state car. He's within the scope of his responsibility at the time. And he lost his friend and other people lost their father and their life support and their husband. And the state has violated the law, thumbs their nose at the law, the entire time period. Not doing, not defending, not doing anything at all about what's going on. And then when we get into, say, court claim jurisdiction doesn't exist. The state has not cited and cannot cite a single case which says that Mandamus must be brought in the court of claims. The case doesn't exist. And then they claim, this claim about the objection to the scope of employment. They say to you in their brief that Vladmir Sokol doesn't apply because it's not a final and a beatable judgment. And they cite no single case anywhere, anywhere to back up that position. And there is no case. There is, however, a Supreme Court case, Greenwich versus the Industrial Commission, which says that the Industrial Commission's decision when the state's involved is indeed a final decision. And they just, they ignored that in their way to argue this nonsense about the scope of the sovereign. Thank you, Mr. Woolman. Mr. Legner. Good morning, Your Honors. May it please the court. My name is Brett Legner. I'm an assistant attorney general, and I represent the defendants' appellees in this matter. Your Honors, this court should affirm the circuit court's judgment because the plaintiff's and intervener's actions are barred by sovereign immunity. Sovereign immunity in Illinois is the rule the General Assembly provided very broadly that the state shall not be made a party in any court. The General Assembly did provide very specific exceptions to that rule. Additionally, courts have held that the waiver of sovereign immunity must be cleared unambiguous. That is, if there's uncertainty or if it's a tie, then sovereign immunity wins. Additionally, the Court of Claims Act provides that any claim against the state founded upon a state law must be heard in the Court of Claims. This provides the framework by which we then turn to the central management services law, specifically Section 105, Subsection 11. Subsection 11, Paragraph 2, provides that a state employee operating a motor vehicle that is sued in a tort action, in that case, in the case of a state employee operating a motor vehicle sued in a tort action, the state shall defend, indemnify, and hold harmless in any judicial forum. Now, the Kaiser and Bartholomew cases do in fact hold that when the state is defending a state employee in such an action, it's not an action against the state that removes it from the circuit court's jurisdiction, but rather a proper judicial forum is the circuit court. That's fine. That's not an issue here. Here, the plaintiff's action in this case and the intervener's actions are not within the second paragraph. These are not actions against a state employee. This is not a tort action concerning a state employee operating a vehicle. These, the plaintiff's and intervener's actions in this case, are actions against the state. The state is the defendant, not the state employee who's operating a motor vehicle. Actions against the state and a violation founded upon a violation of state law, the alleged duty to defend, indemnify, and hold harmless from this second paragraph. The Court of Claims Act would specify that such an action founded upon a state law is without the jurisdiction of the circuit court. Moreover, these actions do not seek a record that the state defendant, indemnify, and hold harmless. These actions specifically seek money. Do not let the plaintiff and intervener kid you that it's about anything else. At this point in the litigation, it's about the payment of money. The third paragraph of subsection 11 provides that claims against the state under the self-insurance plan may be brought only in the Court of Claims. You can see by the plaintiff's complaint and the intervener's complaint. This is a claim, these are claims against the state, brought under the self-insurance plan for money, for the payment of money. Those may be brought only in the Court of Claims. The third paragraph plainly applies to these actions, the second paragraph does not. The plaintiffs and interveners attempt to bring this case within essentially the broad officer's suit exception to sovereign immunity, saying that you can bring a mandamus claim against the state to make the state comply with law. And that's true as a general proposition. That is definitely true as a general proposition. But again, this is not about anything other than the payment of money. And when the relief sought from the state is the payment of money, that is not within the officer's suit exception to sovereign immunity. That is something that may be brought, if anywhere, only in the Court of Claims. Along those lines, the argument that the state simply did nothing in this case is incorrect. The state made the decision. The state didn't ignore the letters that have been tenored to it, the question of that. The state made the decision. Continuing, the state has made the decision, saying, based on the facts that we've been given, the purported insurer, Mr. Farm, was not acting in the scope of his employment when the accident occurred. Subsequently, after the workers' compensation decision came out and defense was tenored again, the state said, the workers' compensation commission, the arbitrator, specifically found that he was not driving, and you have to be a driver to be an insurer within paragraph two. The state didn't thumb its nose at these requests, at these tenor requests. The state looked at the request and said, you don't fall within the self-insurance policy, so we don't need to do anything. Now, whether the state ultimately was correct or not in that does not mean that this is a proper action for mandamus within an officer's suit, except in a sovereign community. The failure to correct the exercise of discretion, and the statute clearly says that the state can choose to defend, but the state does not have to defend when the issue would not be within the self-insurance policy. But the officer's suit exception, except in a sovereign community, applies when the state undertakes some ultra-virus act, some act that, in the exercise of its discretion, it just does not have authority to do. It does not apply when the state, at most, incorrectly exercises its discretion, which is, at most, what the plaintiffs and interviewers have alleged in this case. And that comes from the Supreme Court's PHL case concerning the President Lincoln Hotel case, which, again, indicated that so long as the state is exercising discretion, even if that's incorrect, sovereign immunity still applies, and you can't bring a mandamus action against the state. The state has to be acting in an ultra-virus manner, and there's no suggestion that the state was doing that in this case. Additionally, Your Honor, the argument that collateral estoppel bars the state from making certain claims is simply incorrect. Simply incorrect. First of all, there was no final judgment for collateral estoppel purposes, because the state is not given an opportunity to appeal a workers' compensation commission full commission decision. The state has no appeals that can be exhausted. For collateral estoppel purposes, a final judgment is one after which all appeals have been exhausted. The state does not have the opportunity to go through an appellate process, a judicial review process, given the equities involved in the application of the collateral estoppel doctrine. It would be certainly inequitable to bind the state uniquely, as opposed to all other parties that appear before getting awards and getting a workers' compensation commission decision, to bind the state uniquely based on the commission decision, where those decisions would not have that same effect, or may not have that same effect, against any other party. Additionally, when the workers' compensation commission decision came out, the commission applied a different test than would be at issue in paragraph 2 of section 11. The workers' compensation commission found that Barham was entitled to benefits, because his actions were reasonable and foreseeable in the course of his employment. However, here, for the purposes of determining whether he was in the scope of his employment, as is required in the second paragraph of section 11, the agency law test applies, and that requires a determination of whether the acts were those he was entitled to perform, whether they were substantially within the authorized time and space limits, and if the activity were undertaken at least in part for the purpose to serve the employer, the master. A reasonable and foreseeable decision by the workers' compensation commission does not go to all those elements. That is not to say that it forecloses a finding against Barham on these factors, but it is to say that it's a different test, and a finding of one does not necessarily mean a finding of the other. Accordingly, collateral estoppel would not apply for that reason. Additionally, collateral estoppel, if it does apply, and if the workers' compensation commission decision does apply, it applies both ways. And the commission said there's no suggestion that he was driving. The arbitrator found that the evidence was to the contrary. The evidence was that Barham was not driving. So insofar as there's a preclusive effect to those facts, the facts in the compensation commission decision, the preclusive effect should be that he was not a driver, and therefore not an insured under the policy, and did not fall within paragraph two. Paragraph two, again, specifies an employee operating a motor vehicle. If we have something to be given preclusive effect by the workers' compensation commission decision, we have a finding that he was not operating a motor vehicle. Therefore, the state's duties under the second paragraph would not arise. Finally, interveners argue that the state is estopped from raising policy offenses under traditional insurance defense law, because when they denied the tender of defense, they did not seek a declaratory judgment action, or they did not defend under a reservation of rights. But this type of estoppel only applies if there is a breach of the duty to defend. And that's a separate test. You do not breach your duty to defend under these insurance defense principles, merely by saying, we're not going to defend, and then failing to take steps. You breach your duty to defend if you say, we're not going to defend, you fail to take any steps, and your initial declining to defend meets the requirements of the breach of the duty to defend, i.e., it would have been obvious from the facts you presented that their claim was plausibly or feasibly within insurance policy coverage. And they make no argument, they make no attempt to apply that actual test. They simply say, because they didn't take any other actions, the state is estopped from raising policy offenses. That is simply not the breach of duty to defend test. And again, whenever the state was presented with facts in the letters, it showed, they showed that Barnum was plausibly acting outside of his goals of employment. Or, once the Workers' Compensation Commission decisions were presented to them along with the, you know, as a basis for defense, again, they suggested he was not a driver, and that removed him from policy coverage. Because this policy, this self-insurance plan, covers drivers of state cars in the course of their, in the scope of their state employment. So for these reasons, Your Honors, working backwards, back to front, the estoppel theories do not preclude the state or otherwise bind the state into providing indemnification, or in other words, at this point, paying the jury for it. Additionally, these are not actions brought by the plaintiffs and the interveners under the second paragraph of subsection 11 of section 105 of the Central Management Services Law. These are actions against the state to get the state to pay money, to get the state to pay a jury verdict. These are not actions, these are not actions against the state employee for operating a motor vehicle to the extent that they seek to enforce a duty on the state to defend, to indemnify, and to hold harmless. This is not the prime place to do it. The state has no option, the state can't control the defense anymore at this point. It's gone to a jury verdict, this court is upheld. The state cannot undertake any of those actions, and that's not what they seek the state to do. Again, they seek the state just to pay money. Whether or not they could have brought an action to seek the, to require the state to come in and defend Barham in the underlying court action, as part of that court action is not presented here. The question is whether they can bring these other actions at this point when the case has gone to jury verdict. Whether to expressly request relief of getting the state to pay money, and that brings us within the third paragraph of subsection 11, it brings us within the General Court of Claims Act, the broader Court of Claims Act, because this is a, these are actions predicated on a violation of state law, and it brings us within the broader principles where the generals that we provided that the state If this court has no further questions, I ask that you affirm the judgment of the Supreme Court. Thank you very much for your time. Thank you, Mr. Lightner. Yes, you may. Then you've got four, is that it? That's right. Thank you. We're seeking recovery of civil litigation expenses. The Court of Claims Act specifically provides it does not have jurisdiction over the recovery of expenses for civil litigation. That's in the statute. Their response in their brief was, because we argued that therefore we have the right to pursue that in circuit court, their response was, no, you don't. You don't get to recover in any place. The issue on preclusion of policy defenses, a grasp. The state in its brief stated they were not stopped from asserting policy defenses because they're not collaterally stopped by virtue of a commission decision. They did not address whether they're collaterally stopped for failure to file a D.J. or defend under a reservation. They've waited. He argued it. They didn't raise it in their brief. We object to it. Lastly, he says we weren't in the scope. Pages 12 of the Statement of Facts in our brief. Mr. Barham and I, who were also an employee of the Illinois Department of Corrections, had traveled in Mr. Barham's state-issued car to Harrisburg, Illinois, in order to pick up the then-director of the Department of Corrections at the Harrisburg-Raleigh Airport and to take him to a political event at Southeastern Illinois College and return him to the airport. The incident occurred after they had dropped off the director and were returning him to the Bionic Correctional Center. He was in the scope and the court sent him. Thank you, Mr. Barham. Whether he was or not is irrelevant here. The issue here is, did the circuit court have jurisdiction? If they want to raise these issues in the mandamus action and claim that we have exercised, that we've done what we're supposed to do, that's fine. But their claim that this is a case just for money damages is not true. Obviously, that's why the suit was filed. We're seeking money. But in this lawsuit, we're seeking this court to remand the case to the circuit court so the circuit court can say you have to comply with the law. And that's it. And failure to comply with the law is ultra-violence. He talked about how, generally speaking, mandamus lies. Well, generally speaking, there's not a single case he can cite, not a single case he can cite where the court of claims has issued a written injunction or a written mandamus. So the issue here is, Mr. Director, here's the statute. Did you comply with it or didn't you? Now you have to comply with it. And you have discretion in how you comply. This case is amazing. I mean, you hear the State make this goose and gander argument about the workers' compensation decision, whether that's race to cut. He cited to you the case law on that in his brief. And he knows that ISIM was not a party or privy to the party of who was driving in the complaint. The complaint says the evidence shows that Barham was driving. Everybody knows now Barham was driving. But the point is that he said that should somehow bind ISIM, who didn't participate in it, had nothing to do with the requirements he set forth that had to be met, were clearly met. I don't think that the issue of collateral estoppel or scope employment have anything to do with the motion here. The question here is, why are we here in seeking mandamus? And the issue is why we're here was clearly covered by the Kaiser decision, which says this is not the plaintiff saying that you've got to be here. This is the legislation. The legislation says here's what we do. Here's how we get it. And this court has jurisdiction. It's a simple jurisdiction issue. The trial court, Barham, was defused by improper argument and misstatement of facts in the law repeatedly by the State. And this is a good example. He knows what he said about estoppel is false. He cited it in his brief. And then he argues to you the exact contrary. He can't give you a case anywhere that says what he said but doesn't stop it. He keeps on compounding it the same way. But the mandamus has to be issued here because the State's not going to do what they have an obligation morally and legally to do, and the search court needs to make that decision. Thank you. Thank you, gentlemen and ladies. Thank you, Mr. Womack and Mr. Farrell and Mr. Reidner. We will take the matter under advisement under ruling.